# Dampf's Appeal.

1. A daughter of a decedent intestate, who was entitled to a distributive share of his estate, gave to the surviving members of a firm in which he had been a partner, a receipt for certain money, which she acknowledged to be in full for all claims by her against her father's estate real and personal, except such amount as was to be paid to her after the death of his widow, and whereby she further released to said firm and decedent's administrators all claims by her against them, except as aforesaid. The administrators filed an account, including, inter alia, the proceeds of certain real estate of decedent sold by them, to which account the daughter filed exceptions. *Held,* that by the terms of said receipt, the said daughter still retained an interest in her father's real estate, which entitled her to a standing in court to dispute the correctness of the account filed by his administrators.

2. A married woman, by power of attorney not separately acknowledged, authorized and empowered her husband to do all necessary acts relative to her estate, to sell any part of the same, whether consisting of realty or personalty, to collect all money due her, receipt for the same etc., etc. Her husband, in pursuance of this authority, gave the receipt which has been above described; it did not appear that any portion of the money receipted for ever reached the married woman's hands. *Held,* that the transaction amounting to an assignment of the married woman's interest in her father's estate, the precise value of that interest being yet uncertain, the receipt was not binding upon the married woman, that it was not such an instrument as was contemplated and authorized by the Act of April 11th 1856, sect. 4, Pamph. L. 315, and that, therefore, upon the administrators of decedent subsequently filing their account, the married woman was not precluded from taking proper steps to test its correctness.

March 10th and 11th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Bradford county:* Of January Term 1881, No. 16.

This was an appeal by John Henry Dampf and Fanny P. Dampf, his wife, in right of said wife, from a decree of said court, dismissing her exceptions to the account of the administrators of Daniel F. Pomeroy, deceased, on the ground that she had no interest or standing in court, and confirming the said account.

[Dampf's Appeal.]

Daniel F. Pomeroy died in April 1872, intestate, leaving to survive him a widow and two children, of whom the appellant, Fanny P. Dampf, is one. His brother, Eleazar Pomeroy, and his father-in-law, Dummer Lilly, were appointed administrators of his estate. They filed their account May 16th 1879, to which Mrs. Dampf and her husband filed exceptions, and asked for the appointment of an auditor. After argument, the court refused to appoint an auditor. Upon the hearing of a rule to show cause why the exceptions should not be dismissed and the account finally confirmed, the following facts appeared: Daniel F. Pomeroy, at the time of his death, was a member of two firms, the one doing business at Troy, Bradford county, under the name of Pomeroy Brothers, and the other at Blossburg, Tioga county, under the name of Pomeroy Brothers & Smith. The surviving partners of the firm of Pomeroy Brothers are Horace Pomeroy and Samuel W. Pomeroy, and the same, with one Frederick E. Smith, are the surviving partners of the firm of Pomeroy Brothers & Smith. The business of both firms was banking; and in addition thereto, Pomeroy Brothers dealt largely in real estate, and were the owners of a considerable amount thereof at the time of his death.

On the 11th of July 1874, Fanny P. Dampf gave to her husband the following letter of attorney, viz:

"Know all men by these presents, that I, Fanny P. Dampf, wife of John Henry Dampf, of Corning, Steuben county, New York, have made, constituted and appointed, and by these presents do make, constitute and appoint my husband, John Henry Dampf, my true and lawful attorney, for me and in my name, place and stead, to take charge, care and management of all my property, both real and personal, and to care for, manage and control the same, to collect all dividends, interest or other moneys at any time due or owing to me from any person or corporation, and give proper receipts, releases or discharges for the same, to sell and convey any part of my estate and execute and deliver all necessary papers, to transfer or convey the same under seal or otherwise, to endorse in my name all drafts and notes and in general to do all other acts or things which he may consider useful or necessary connected with my business, property and interests—giving and granting unto my said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or would do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney, or his substitute, shall lawfully do or cause to be done by virtue thereof.

[Dampf's Appeal.]

In witness whereof, I have hereunto set my hand and seal, the 11th day of July, one thousand eight hundred and seventy-four.

FANNY P. DAMPF, [SEAL.]

Sealed and delivered in presence of
Q. W. WELLINGTON."

United States of America,
State of New York,    } *ss:*
County of Steuben,

{ SEAL OF     }    Be it known that on the eleventh day of July, one
{ NOT. PUBL. }  thousand eight hundred and seventy-four, before me, personally appeared Fanny P. Dampf above named, who is to me known to be the person described in and who executed the above instrument, and she acknowledged the execution thereof to be her free act and deed.

In testimony whereof, I have hereunto subscribed my name, the day and year last above written.

E. D. MILLS, Notary Public

Recorded in Bradford county, October 14th 1874.

On October 7th 1874, the surviving partners of the firm of Pomeroy Bros., paid to Mr. Dampf, for his wife, the sum of $3855, and obtained the following receipt and release:

$3855.

Received, Troy, Pa., October 7th A. D. 1874, from Pomeroy Bros., three thousand eight hundred and fifty-five dollars, being in full settlement of all my claims of whatever kind or nature, against the estate of my deceased father, Daniel F. Pomeroy, both real and personal, with the exception of the amount to be paid me at the death of Mrs. H. B. Pomeroy, widow. And hereby release and discharge the said Pomeroy Bros. from all claim against them as surviving partners, and release and discharge Eleazar Pomeroy and Dummer Lilly, administrators of said D. F. Pomeroy, from any and all claim by me against them, excepting the said sum to be paid me at the death of said H. B. Pomeroy.

Witness, my hand and seal, at Troy, this day and year aforesaid.

F. P. DAMPF. [SEAL.]

*By her attorney in fact,* J. H. DAMPF.

The administrators charged themselves in their account with the sum of $122,565.58, consisting of "inventory and appraisement" $94,664.74; excess over appraisement $3383.14; and "amount received from S. W. & H. Pomeroy for interest of D. F. Pomeroy in the real estate of Pomeroy Bros., $24,517.70. They credited themselves, inter alia, with a payment to "Pomeroy Bros., for F. P. Dampf $4411.47." No objection was made to this credit in the

exceptions filed by Mrs. Fanny P. Dampf, which exceptions averred, substantially, that the administrators had not charged themselves with the entire estate of the decedent, and that the debit side of the account should have been particularly itemized. In an affidavit filed with the exceptions, Mrs. Dampf averred "that one-third of the personal estate of the decedent belongs to her as one of the heirs of said D. F. Pomeroy." That she had made application, through her husband, to Pomeroy Bros., for the privilege of examining the books of the firm to ascertain the amount of her deceased father's interest therein, but had been refused permission, and that the administrators have refused to compel the surviving partners of Pomeroy Bros. and Pomeroy Bros. & Smith to state an account of the assets of said partnerships.

The court held that Mrs. Dampf, by her receipt to Pomeroy Brothers and release to the administrators of D. F. Pomeroy, executed by her husband as her attorney in fact, had settled for and parted with all her interest in her father's estate, except what was to be paid at the death of the widow, and that she therefore had no standing in court to except to the administrators' account. The court therefore, without going into the merits of the exceptions, entered a decree dismissing them and confirming the account.

Mrs. Dampf and her husband took this appeal, assigning for error: (1) The ruling "that the receipt of October 7th 1874 was a binding disposition of all of appellant's rights and interest in the estate of her deceased father, and excluded her from a standing in court." (2) The decree dismissing her exceptions without consideration of them and confirming the account.

*A. Ricketts* and *Rodney A. Mercur*, for the appellants.—The appellant, Mrs. Dampf, was denied a hearing on the matters averred in her exceptions, the court holding the release executed by her husband, under her power of attorney, conclusive. This was error on several grounds. Mrs. Dampf's interest in that portion of the estate to be distributed at the death of the widow was expressly reserved in the release, and this left in her sufficient interest to except to the account. The receipt was given to the surviving partners of the firm of Pomeroy Brothers, who were trustees for Mrs. Dampf as to the partnership assets, and is not conclusive evidence of a settlement between them and their cestui que trust, a married woman. The release to the administrators, included in the receipt to the partners, expresses no consideration moving from the administrators. The paper is executed by a husband acting as attorney in fact for his wife, under a power of attorney from her, executed in New York, and not acknowledged according to the laws of Pennsylvania. A direct conveyance by her, so acknowledged, would be insufficient to pass her interest in real estate inherited from her father: Glidden *v.* Strupler, 2 P. F.

[Dampf's Appeal.]

Smith 400; Quinn's Appeal, 5 Norris 447. Moreover, her husband is disabled, by the Act of 1848, from so transferring her property. As neither the letter of attorney nor the release were conclusive upon her, the court erred in holding that she had no standing in court.

*Davies* and *Sanderson* (with whom were *Carnochan & Hall,* *E. B. Parsons* and *Overton*), for the appellees.—The surviving partners of the firm of Pomeroy Brothers are not parties to this proceeding, and cannot be charged here with fraud in their settlement with Mrs. Dampf. The power of attorney, though defectively acknowledged as to realty, was sufficient to transfer personalty; and this administration account concerns only personalty and the proceeds of realty. A married woman may appoint her husband her agent. The Act of 1848 applies to sales and encumbrances, and not to the receipt of money by a husband as his wife's agent for *her* use. The Act of April 11th 1856 expressly authorizes a married woman who is entitled to a distributive share of personalty or proceeds of realty of a decedent to sign, seal and deliver, either in person or by attorney, a refunding bond, and to execute all other acts which may lawfully be required by an administrator on payment of such share, with the same effect, for the purpose of binding her separate estate, as if she were sole and unmarried: Hinney *v.* Phillips, 14 Wright 382; Fryer *v.* Rishell, 3 Norris 521. Pomeroy Brothers, acting for the administrators, paid Mrs. Dampf, on October 4th 1874, $3855, in full settlement of her share of the estate, and the administrators reimbursed Pomeroy Brothers, May 5th 1877, with interest. Mrs. Dampf admits the regularity of this settlement by omitting to except to the credit of the payment to Pomeroy Brothers, and that stands confirmed and unexcepted to as a judgment of the court below.

Mr. Justice MERCUR delivered the opinion of the court May 2d 1881.

The appellant is a daughter and heir of D. F. Pomeroy, deceased. The appellees are administrators of his estate. On her petition they were cited to file their account, and filed it. She filed exceptions thereto and applied for the appointment of an auditor. The court, being of opinion she had no interest in her father's estate, refused her application, dismissed her exceptions without considering the matters therein charged, and confirmed the account. The only contention is whether all her interest in the estate was divested, so that she had no right to be heard. Such divestiture is claimed to result from a receipt given by her husband, and attorney in fact, under authority from her.

The main facts necessary to understand the case are these: At the time of his death, D. F. Pomeroy was associated with Horace

Pomeroy and S. W. Pomeroy, under the name of Pomeroy Brothers, as bankers at Troy. The firm of Pomeroy Brothers was also associated with Frederick E. Smith, under the name of Pomeroy Brothers & Smith, as bankers at Blossburg. The firm of Pomeroy Brothers, in addition to banking, was also engaged in farming and in buying and selling cattle. They owned a large amount of real estate. Whether it was held by them as tenants in common, or a portion as copartners, does not appear.

The estate of D. F. Pomeroy was of considerable magnitude. In the account filed, the administrators charged themselves with proceeds of real and personal estate amounting to $122,565.58; but no mention is therein made of decedent's interest in the firm of Pomeroy Brothers & Smith.

While the question of appointing an auditor was being held under advisement the appellees filed a receipt, to which the hand and seal of the appellant, by her attorney in fact, J. H. Dampf, was affixed. It is in these words, to wit:

"$3855. Received, Troy, Pa., October 7th, A. D. 1874, from Pomeroy Bros., three thousand eight hundred and fifty-five dollars, being in full settlement of all my claims of whatever kind or nature, against the estate of my deceased father, Daniel F. Pomeroy, both real and personal, with the exception of the amount to be paid me at the death of Mrs. H. B. Pomeroy, widow. And hereby release and discharge the said Pomeroy Bros., from all claim against them as surviving partners, and release and discharge Eleazer Pomeroy and Dummer Lilly, administrators of said D. F. Pomeroy, from any and all claim by me against them, excepting the said sum to be paid me at the death of said H. B. Pomeroy."

The court thought the effect of this receipt, in connection with the affidavit of the appellant attached to the exceptions filed, showed she had no interest in the estate.

We will first consider the effect of the language of the receipt, assuming it to have been executed by authority of the appellant. The administrators were not a party to it. There is no averment that the money came from them or from the estate. It does purport to except out of the settlement made with Pomeroy Bros. so much of the estate as is to be paid to her on the death of Mrs. Pomeroy, the widow of her father. With the exception stated, it acknowledges the money paid to be in full of her claims against the estate of her father, and it releases and discharges the said Pomeroy Bros. from all claim against them as surviving partners. It closes by releasing the administrators from all claim by her against them, except as before excepted.

Thus it is shown the receipt does not profess to divest all her interest in the estate. It expressly reserves a claim against the administrators. It recognises the existence of real estate, and

[Dampf's Appeal.]

declares that on the death of the widow the appellant shall be entitled to an additional sum. If a sale of the real estate should be made made by the administrators the appellant would be interested in that sale. The measure of her claim would be affected by it. The account filed shows a sale of real estate was made, and the sum received therefor is one of the items. This exception in the receipt of itself shows a continuing interest of the appellant in the estate, and gives her a standing in court. Her right to be heard being thus established she may file all proper exceptions to meet the justice and equity of her case. The court thought the affidavit rather equivocal in averring her interest. It may be admitted that it is not drawn with commendable precision; yet we think there is a substantial averment of interest. In fact that she was a daughter and heir of the decedent was not questioned.

Additional reasons may be stated why this receipt shall not be given the conclusive effect claimed. She was a married woman. Her husband assumed to execute it under a power of attorney from her. The certificate of acknowledgment of that power is not made in the form required by the Act of Assembly to pass the real estate of a married woman. It merely certifies to her identity, and that "she acknowledged the execution thereof to be her free act and deed." It does not declare that she was examined separate and apart from her husband; nor that she executed it without any coercion or compulsion from him; nor that it was either read to her, or that the contents thereof were made known to her. These facts should be substantially stated when the wife unites with her husband in conveying her lands to another. With stronger reason should they be required when the husband attempts to convey his wife's land under a power of attorney to himself. A married woman lacks capacity to convey her real estate otherwise than in the manner prescribed by the statute: Rumfelt v. Clemens, 10 Wright 455; Dunham v. Wright, 3 P. F. Smith 167; Brown v. Bennett, 25 Id. 420; Innes v. Templeton, Pitts. Leg. Jour., of October 20th 1880, p. 73. It is true this rule does not apply to a sale or transfer of a wife's personal estate; nor to her receipt of money. The 4th section of the Act of 11th April 1856, Purd. Dig. 1009, declares, when a married woman shall be entitled to a legacy or to a distributive share of the personal estate, or of the proceeds of the real estate of a deceased person, it shall be competent for her, either in person or by attorney, to sign, seal and deliver a refunding bond, in pursuance of the Act of Assembly in such case made and provided; and also to execute all such other instruments, and to perform all such other acts as may by law be necessary to be done, or may be lawfully required by the executor or administrator upon the payment to her of the moneys to be distributed as aforesaid, with the same effect in binding her separate estate as if she was a feme sole. The object of this act is not to give a married woman

[Dampf's Appeal.]

general powers, nor the power to transact business generally, but to bind herself by such acts and instruments as may be necessary, or be lawfully required by the executors or administrators "upon the payment to her, of the money to be distributed." It is to protect them and give them a legal voucher for what they have actually paid to her. This receipt was not given to the administrators. It does not recite the payment of any money by them. No account had been settled showing her distributive share. It shows no authority for Pomeroy Bros. to act for the administrators. In fact it was not treated as a voucher for money paid by them; but it appears to have been treated by them and by the court as an assignment to Pomeroy Bros. of her portion of the estate. This, as is held in Buchanan et al. *v.* Buchanan, 10 Wright 186, is the assumption of a power not intended to be given by the Act of 1856, cited. It does not appear in the case that any of the money mentioned in the receipt actually reached the hands of the appellant.

Some of the exceptions filed are very general; yet reasons are given therefor, which, if true, in a great measure excuse their generality. The exceptions raise questions of fact to be ascertained by evidence to be taken. Whenever exceptions to the account of an administrator are filed by one interested it is made the duty of the court, by the Act of 14th April 1835, Purd. Dig. 445, to decide whether the matters contested call for a reference to an auditor, and if they do, to appoint one or more. The court did not decide that the contested matters averred in the exceptions did not call for a reference, and it is very clear they did; but that the appellant had no such standing in the case as to permit her to make the inquiry. In this the learned judge erred.

The ability of the appellant to sustain any of her exceptions, or to disprove the correctness of the account filed, are questions not now before us. We think she has a right to make the attempt.

> Decree of final confirmation of the account reversed at the costs of the appellees; the exceptions are reinstated, and a *procedendo* awarded.

GORDON, J., dissented.